**FILED**

JUN 1 1 2015

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA )
)
v. )
)
OMEED MEMAR )
)

**15CR 345**

Violations:   Title 18, United States
Code, Sections 1347 and 1035(a)(2)

**JUDGE LEINENWEBER**

**MAGISTRATE JUDGE COLE**

## COUNT ONE

The SPECIAL JANUARY 2015 GRAND JURY charges:

1.     At times material to this indictment:

a.     Defendant OMEED MEMAR was a physician licensed to practice medicine in Illinois.  Defendant MEMAR owned and operated a clinic called the Academic Dermatology & Skin Cancer Institute, located in Chicago, Illinois.

b.     Blue Cross and Blue Shield of Illinois, Aetna, and Cigna were health care benefit programs that provided health insurance plans to groups of individuals through their employer-sponsored health insurance plans.  Blue Cross and Blue Shield of Illinois, Aetna, and Cigna reimbursed physicians for medically necessary services and did not reimburse physicians for cosmetic treatments.

c.     Medicare was a health care benefit program that provided free or below-cost health care benefits to certain eligible beneficiaries, primarily persons who were sixty-five years of age and older.  Medicare reimbursed physicians for medically necessary services and did not reimburse physicians for cosmetic treatments.

1

d. To have received reimbursement for a covered service from a health care benefit program, a health care provider had to submit a claim form containing the required information appropriately identifying, among other things, the dates of service, provider, patient, the services rendered, the diagnosis associated with the services, and number of units rendered.

e. Health care providers reported professional services using numerical codes called CPT codes. Health care providers reported diagnoses using numerical codes called ICD-9 codes.

f. ICD-9 code 702.0 was a diagnostic code for a skin condition called actinic keratosis, which are pre-cancerous lesions.

g. A claim submitted using CPT code 17004 and ICD-9 code 702.0 referred to the destruction of 15 or more actinic keratosis lesions, and generally was reimbursed at a higher rate than the destruction of one to 14 actinic keratosis lesions.

h. Between 2007 and 2013, MEMAR and his practice submitted claims to Blue Cross and Blue Shield of Illinois, Aetna, Cigna, Medicare, and other health care benefit programs for the destruction of 15 or more actinic keratosis lesions on hundreds of patients, including multiple patients for whom MEMAR submitted more than 10 such claims in a single year.

2. Beginning in or about 2007, and continuing through in or about 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OMEED MEMAR,

defendant herein, devised, intended to devise, and participated in a scheme to defraud and to obtain money from health care benefit programs by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

2

3.     It was part of the scheme that defendant MEMAR submitted claims for intense-pulsed light treatments to health care benefit programs, falsely claiming that the treatments were medically necessary to destroy actinic keratosis lesions, when defendant knew that his patients did not have that condition and that the treatments were cosmetic in nature.

4.     It was further part of the scheme that defendant MEMAR documented and caused to be documented in patients' medical charts false and fictitious signs and symptoms in order to provide written support for the medically unnecessary treatments defendant MEMAR ordered.

5.     It was further part of the scheme that defendant MEMAR further included and caused to be included in patients' charts various false and fictitious diagnoses of actinic keratosis that were not based on the patients' actual signs and symptoms but were included to provide written fraudulent support for the treatments defendant MEMAR ordered.

6.     It was further part of the scheme that defendant MEMAR submitted and caused to be submitted claims to health care benefit programs for the purported destruction of actinic keratosis lesions under CPT code 17004 that defendant MEMAR knew were not properly payable because (1) defendant MEMAR had included and caused to be included false diagnoses in the claims, (2) defendant MEMAR falsified and caused to be falsified the medical records supporting the claim by including false and fictitious diagnoses and other information, and (3) the treatments for which defendant MEMAR sought reimbursement were not medically necessary.

7.     It was further part of the scheme that defendant MEMAR submitted and caused to be submitted false claims in this manner for multiple patients during the scheme, including, for example, Patients A through H, resulting in losses to health care benefit programs.

3

**Patient A**

8.      It was further part of the scheme that on approximately five occasions in 2010, defendant MEMAR billed Blue Cross and Blue Shield of Illinois for intense-pulsed light treatments for Patient A that he falsely claimed were for the destruction of 15 or more actinic keratosis lesions.

9.      It was further part of the scheme that defendant MEMAR ordered his staff to provide intense-pulsed light treatments for Patient A in 2010 and that defendant MEMAR instructed his staff to document the procedures for Patient A falsely as the destruction of 15 or more actinic keratosis lesions.

10.     It was further part of the scheme that, on multiple occasions, defendant MEMAR put and caused his staff to put false information into the patient files for Patient A, particularly false information that there were "15 scaly plaques" on Patient A's face.

**Patient B**

11.     It was further part of the scheme that on approximately 13 occasions beginning in or about 2009 and continuing until in and about 2011, defendant MEMAR billed Blue Cross and Blue Shield of Illinois for intense-pulsed light treatments for Patient B that he falsely claimed were for the destruction of 15 or more actinic keratosis lesions.

12.     It was further part of the scheme that defendant MEMAR ordered his staff to provide intense-pulsed light treatments for Patient B beginning in or about 2009 and continuing until in and about 2011 and that defendant MEMAR instructed his staff to document the procedures for Patient B falsely as the destruction of 15 or more actinic keratosis lesions.

13. It was further part of the scheme that, on multiple occasions, defendant MEMAR put and caused his staff to put false information into the patient files for Patient B, particularly false information that there were "25 scaly plaques" on Patient B's face on multiple occasions.

## Patient C

14. It was further part of the scheme that on approximately 11 occasions beginning in or about 2008 and continuing until in or about 2011, defendant MEMAR billed Blue Cross and Blue Shield of Illinois for intense-pulsed light treatments for Patient C that he falsely claimed were for the destruction of 15 or more actinic keratosis lesions.

15. It was further part of the scheme that defendant MEMAR ordered his staff to provide intense-pulsed light treatments for Patient C that began in 2008 and continued until 2011 and that defendant MEMAR instructed his staff to document the procedures for Patient C falsely as the destruction of 15 or more actinic keratosis lesions.

16. It was further part of the scheme that, on multiple occasions, defendant MEMAR put and caused his staff to put false information into the patient files for Patient C, particularly false information that there were "25 scaly plaques" on Patient C's face on multiple occasions.

## Patient D

17. It was further part of the scheme that on approximately 25 occasions beginning in or about 2008 and continuing until in or about January 2013, defendant MEMAR billed private health insurance carriers, including Blue Cross and Blue Shield of Illinois and Aetna, for intense-pulsed light treatments for Patient D that he falsely claimed were for the destruction of 15 or more actinic keratosis lesions.

18. It was further part of the scheme that defendant MEMAR ordered his staff to provide intense-pulsed light treatments for Patient D that began in 2008 and continued until

5

January 2013 and that defendant MEMAR instructed his staff to document the procedures for Patient D falsely as the destruction of 15 or more actinic keratosis lesions.

19. It was further part of the scheme that, on multiple occasions, defendant MEMAR put and caused his staff to put false information into the patient files for Patient D, particularly false information that there were "25 scaly plaques" on Patient D's face on multiple occasions.

### Patient E

20. It was further part of the scheme that on approximately 23 occasions beginning in or about 2010 and continuing until in and about January 2013, defendant MEMAR billed Blue Cross and Blue Shield of Illinois for intense-pulsed light treatments for Patient E that he falsely claimed were for the destruction of 15 or more actinic keratosis lesions.

21. It was further part of the scheme that defendant MEMAR ordered his staff to provide intense-pulsed light treatments for Patient E beginning in or about 2010 and continuing until in and about January 2013 and that defendant MEMAR instructed his staff to document the procedures for Patient E falsely as the destruction of 15 or more actinic keratosis lesions.

22. It was further part of the scheme that, on multiple occasions, defendant MEMAR put and caused his staff to put false information into the patient files for Patient E, particularly false information that there were "15 scaly plaques" on Patient E's face on multiple occasions.

### Patient F

23. It was further part of the scheme that on approximately 14 occasions beginning in or about 2009 and continuing until in and about 2012, defendant MEMAR billed private health insurance carriers, including Cigna, for intense-pulsed light treatments for Patient F that he falsely claimed were for the destruction of 15 or more actinic keratosis lesions.

6

24. It was further part of the scheme that defendant MEMAR ordered his staff to provide intense-pulsed light treatments for Patient F beginning in or about 2009 and continuing until in and about 2012 and that defendant MEMAR instructed his staff to document the procedures for Patient F falsely as the destruction of 15 or more actinic keratosis lesions.

25. It was further part of the scheme that, on multiple occasions, defendant MEMAR put and caused his staff to put false information into the patient files for Patient F, particularly false information that there were "15 scaly plaques" on Patient F's face on multiple occasions.

### Patient G

26. It was further part of the scheme that on approximately two occasions in 2012, defendant MEMAR billed Blue Cross and Blue Shield of Illinois for intense-pulsed light treatments for Patient G that he falsely claimed were for the destruction of 15 or more actinic keratosis lesions.

27. It was further part of the scheme that defendant MEMAR ordered his staff to provide intense-pulsed light treatments for Patient G in 2010 and that defendant MEMAR instructed his staff to document the procedures for Patient G falsely as the destruction of 15 or more actinic keratosis lesions.

28. It was further part of the scheme that, on multiple occasions, defendant MEMAR put and caused his staff to put false information into the patient files for Patient G, particularly false information that there were "15 scaly plaques" on Patient G's face on two occasions.

### Patient H

29. It was further part of the scheme that on approximately 37 occasions beginning in or about 2007 and continuing until in or about 2013, defendant MEMAR billed Blue Cross and

Blue Shield of Illinois for intense-pulsed light treatments for Patient H that he falsely claimed were for the destruction of 15 or more actinic keratosis lesions.

30. It was further part of the scheme that defendant MEMAR ordered his staff to provide intense-pulsed light treatments for Patient H that began in 2007 and continued until January 2013 and that defendant MEMAR instructed his staff to document the procedures falsely for Patient H as the destruction of 15 or more actinic keratosis lesions.

31. It was further part of the scheme that, on multiple occasions, defendant MEMAR put and caused his staff to put false information into the patient files for Patient H, particularly false information that there were "25 scaly plaques" on Patient H's face on multiple occasions.

32. It was further part of the scheme that defendant MEMAR misrepresented, concealed, hid and caused to be misrepresented, concealed, and hidden acts done in furtherance of the scheme and the purposes of those acts.

33. On or about August 31, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OMEED MEMAR,

defendant herein, for the purpose of executing the scheme, knowingly did submit and caused to be submitted a claim to Blue Cross and Blue Shield of Illinois for services provided to Patient A on or about August 26, 2010, namely, the alleged destruction of 15 or more actinic keratosis lesions, when MEMAR knew that Patient A did not have any such actinic keratosis lesions.

In violation of Title 18, United States Code, Section 1347.

## COUNT TWO

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs 1 through 32 of Count One are incorporated here.

2.     On or about November 16, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendant herein, for the purpose of executing the scheme, knowingly did submit and caused to be submitted a claim to Blue Cross and Blue Shield of Illinois for services provided to Patient B on or about November 9, 2010, namely, the alleged destruction of 15 or more actinic keratosis lesions, when MEMAR knew that Patient B did not have any such actinic keratosis lesions.

In violation of Title 18, United States Code, Section 1347.

## COUNT THREE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.  Paragraphs 1 through 32 of Count One are incorporated here.

2.  On or about December 13, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendant herein, for the purpose of executing the scheme, knowingly did submit and caused to be submitted a claim to Blue Cross and Blue Shield of Illinois for services provided to Patient C on or about December 6, 2010, namely, the alleged destruction of 15 or more actinic keratosis lesions, when MEMAR knew that Patient C did not have any such actinic keratosis lesions.

In violation of Title 18, United States Code, Section 1347.

## COUNT FOUR

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs 1 through 32 of Count One are incorporated here.

2.      On or about June 7, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendant herein, for the purpose of executing the scheme, knowingly did submit and caused to be submitted a claim to Blue Cross and Blue Shield of Illinois for services provided to Patient D on or about May 31, 2011, namely, the alleged destruction of 15 or more actinic keratosis lesions, when MEMAR knew that Patient D did not have any such actinic keratosis lesions.

In violation of Title 18, United States Code, Section 1347.

## COUNT FIVE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs 1 through 32 of Count One are incorporated here.

2.      On or about January 10, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendant herein, for the purpose of executing the scheme, knowingly did submit and caused to be submitted a claim to Blue Cross and Blue Shield of Illinois for services provided to Patient E on or about December 27, 2011, namely, the alleged destruction of 15 or more actinic keratosis lesions, when MEMAR knew that Patient E did not have any such actinic keratosis lesions.

In violation of Title 18, United States Code, Section 1347.

## COUNT SIX

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs 1 through 32 of Count One are incorporated here.

2.      On or about January 16, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendant herein, for the purpose of executing the scheme, knowingly did submit and caused to be submitted a claim to Cigna for services provided to Patient F on or about January 10, 2012, namely, the alleged destruction of 15 or more actinic keratosis lesions, when MEMAR knew that Patient F did not have any such actinic keratosis lesions.

In violation of Title 18, United States Code, Section 1347.

## COUNT SEVEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs 1 through 32 of Count One are incorporated here.

2.     On or about April 3, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendant herein, for the purpose of executing the scheme, knowingly did submit and caused to be submitted a claim to Blue Cross and Blue Shield of Illinois for services provided to Patient G on or about March 16, 2012, namely, the alleged destruction of 15 or more actinic keratosis lesions, when MEMAR knew that Patient G did not have any such actinic keratosis lesions.

In violation of Title 18, United States Code, Section 1347.

14

## COUNT EIGHT

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs 1 through 32 of Count One are incorporated here.

2.     On or about June 20, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OMEED MEMAR,

defendant herein, for the purpose of executing the scheme, knowingly did submit and caused to be submitted a claim to Blue Cross and Blue Shield of Illinois for services provided to Patient H on or about June 15, 2012, namely, the alleged destruction of 15 or more actinic keratosis lesions, when MEMAR knew that Patient H did not have any such actinic keratosis lesions.

In violation of Title 18, United States Code, Section 1347.

## COUNT NINE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Defendant OMEED MEMAR was a physician licensed to practice medicine in Illinois.   Defendant MEMAR owned and operated a clinic called the Academic Dermatology & Skin Cancer Institute, located in Chicago, Illinois.

2.     On or about August 26, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendants herein, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation, and make and cause to be made a materially false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient A had "15 scaly plaques" on her face;

In violation of Title 18, United States Code, Section 1035(a)(2).

16

## COUNT TEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Defendant OMEED MEMAR was a physician licensed to practice medicine in Illinois.  Defendant MEMAR owned and operated a clinic called the Academic Dermatology & Skin Cancer Institute, located in Chicago, Illinois.

2.     On or about November 9, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendants herein, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation, and make and cause to be made a materially false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient B had "25 red scaly plaques" on her face;

In violation of Title 18, United States Code, Section 1035(a)(2).

## COUNT ELEVEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Defendant OMEED MEMAR was a physician licensed to practice medicine in Illinois.   Defendant MEMAR owned and operated a clinic called the Academic Dermatology & Skin Cancer Institute, located in Chicago, Illinois.

2.      On or about December 6, 2010, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendants herein, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation, and make and cause to be made a materially false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient C had "25 scaly plaques" on her face;

In violation of Title 18, United States Code, Section 1035(a)(2).

18

## COUNT TWELVE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Defendant OMEED MEMAR was a physician licensed to practice medicine in Illinois.   Defendant MEMAR owned and operated a clinic called the Academic Dermatology & Skin Cancer Institute, located in Chicago, Illinois.

2.     On or about May 31, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OMEED MEMAR,

defendants herein, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation, and make and cause to be made a materially false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient D had "25 scaly macules" on her face;

In violation of Title 18, United States Code, Section 1035(a)(2).

19

## COUNT THIRTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Defendant OMEED MEMAR was a physician licensed to practice medicine in Illinois.  Defendant MEMAR owned and operated a clinic called the Academic Dermatology & Skin Cancer Institute, located in Chicago, Illinois.

2.      On or about December 27, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendants herein, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation, and make and cause to be made a materially false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient E had "15 scaly plaques" on his face;

In violation of Title 18, United States Code, Section 1035(a)(2).

20

## COUNT FOURTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Defendant OMEED MEMAR was a physician licensed to practice medicine in Illinois.  Defendant MEMAR owned and operated a clinic called the Academic Dermatology & Skin Cancer Institute, located in Chicago, Illinois.

2.     On or about January 10, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendants herein, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation, and make and cause to be made a materially false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient F had "15 scaly plaques" on her face;

In violation of Title 18, United States Code, Section 1035(a)(2).

21

## COUNT FIFTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Defendant OMEED MEMAR was a physician licensed to practice medicine in Illinois.   Defendant MEMAR owned and operated a clinic called the Academic Dermatology & Skin Cancer Institute, located in Chicago, Illinois.

2.     On or about March 16, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### OMEED MEMAR,

defendants herein, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation, and make and cause to be made a materially false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient G had "15 scaly plaques" on her face;

In violation of Title 18, United States Code, Section 1035(a)(2).

## COUNT SIXTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Defendant OMEED MEMAR was a physician licensed to practice medicine in Illinois.  Defendant MEMAR owned and operated a clinic called the Academic Dermatology & Skin Cancer Institute, located in Chicago, Illinois.

2.     On or about June 15, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OMEED MEMAR,

defendants herein, did knowingly and willfully make and cause to be made a materially false, fictitious, and fraudulent statement and representation, and make and cause to be made a materially false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, in a matter involving a health care benefit program in connection with the payment for health care benefits and services, namely, a statement that Patient H had "15 scaly plaques" on her face;

In violation of Title 18, United States Code, Section 1035(a)(2).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

23